# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00004-CV

**Cheyenne Winters, Appellant**

**v.**

**Thomas Marshall Winters, Appellee**

## FROM THE DISTRICT COURT OF MILLS COUNTY, 35TH JUDICIAL DISTRICT
## NO. 07-02-5943, HONORABLE STEPHEN ELLIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Cheyenne Winters sued appellee Thomas Marshall Winters for divorce, seeking custody of the couple's two children.[1] Marshall counter-sued and likewise sought custody of the children. The jury appointed the parties joint managing conservators and awarded Marshall the exclusive right to designate the children's primary residence. The trial court rendered a decree on the jury's verdict. In four issues on appeal, Cheyenne asserts that (1) the trial court abused its discretion in permitting a jury trial on the conservatorship issue when "there was already a judicial finding of family violence against [Marshall]," (2) the court erred in submitting the conservatorship issue to the jury in light of that finding, (3) the trial court and the jury "disregard[ed] credible evidence adduced at trial that a protective order was issued finding family violence by [Marshall],"

---

[1] Because the parties have the same last name, to avoid confusion, we will refer to them by their preferred given names, Cheyenne and Marshall.

and (4) "[Cheyenne] was 'home-towned' and did not receive a fair trial." We will affirm the trial court's decree.

## FACTUAL AND PROCEDURAL BACKGROUND

Cheyenne and Marshall were married in 2002 and had two children. After an alleged incident of family violence, Cheyenne filed for divorce in 2007 and requested a protective order against Marshall. In an affidavit in support of her request for a temporary ex parte protective order, Cheyenne averred that Marshall had a history of alcohol abuse and physical violence and had recently abused her and the couple's daughter. Based on the affidavit, the court entered a temporary protective order and scheduled a hearing on Cheyenne's motion for a permanent order.

At the subsequent hearing, Cheyenne testified that Mashall had committed several incidents of domestic violence against her and the couple's young daughter. Marshall and his psychologist also testified. Marshall largely denied Cheyenne's accusations, and the psychologist testified that Marshall did not have a violent personality and was not a threat to Cheyenne or the children. After the hearing, the trial court entered a permanent protective order, finding that Marshall committed family violence against Cheyenne. The court, however, specifically noted in the order that it did not find that Marshall committed family violence against the couple's children.

Marshall counter-sued for divorce, requested custody of the children, and demanded a jury trial on the issue of conservatorship. During trial, the court admitted the protective order into evidence over Marshall's objection. The jury appointed both parents joint managing conservators and awarded Marshall the exclusive right to designate the children's permanent residence. The court rendered a divorce decree on the jury's verdict. Cheyenne appeals.

2

## STANDARD OF REVIEW

Cheyenne's issues on appeal require us to interpret the family code. The interpretation of a statute is a question of law, which we review de novo. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). Our objective in interpreting any statute is to determine legislative intent. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). We look to the statute's plain meaning and construe it as a whole to give effect to every part, *see id.*, unless such a construction would lead to absurd or nonsensical results, *FKM P'ship v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). We may consider the object of the statute, legislative history, and the consequences of a proposed construction. Tex. Gov't Code Ann. § 311.023(1), (3), (5) (West 2005).

## DISCUSSION

In her first two issues, Cheyenne asserts that the trial court erred in allowing a jury trial on the issue of conservatorship and in submitting the conservatorship question to the jury in light of the court's prior finding in the protective order that Marshall had committed family violence against her. Cheyenne asserts that, in light of such a finding, subsections (a) through (c) of section 153.004 of the family code prohibit Marshall from being appointed as a joint managing conservator. Subsections (a) through (c) of section 153.004 state:

(a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

(b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child, including a sexual assault in violation of Section 22.011 or 22.021, Penal Code, that results in the other parent becoming pregnant with the child. A history of sexual abuse includes a sexual assault that results in the other parent becoming pregnant with the child, regardless of the prior relationship of the parents. It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child.

(c) The court shall consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator.

Tex. Fam. Code Ann. § 153.004(a)-(c) (West 2008).

Although section 153.004 prohibits the appointment of joint managing conservators if there is credible evidence of a history or pattern of physical abuse, that section does not affect a party's right to demand a jury trial on the issue of conservatorship. Section 105.002 of the family code requires the court to hold a jury trial on issues of conservatorship and to submit those issues to a jury if one party properly demands a jury trial. *See id*. § 105.002 (West 2008). Further, the court may not contravene the jury's verdict on issues on conservatorship. *Id.* Section 105.002 states:

(a)     Except as provided by Subsection (b), a party may demand a jury trial.

(b)     A party may not demand a jury trial in:

    (1)     a suit in which adoption is sought, including a trial on the issue of denial or revocation of consent to the adoption by the managing conservator; or

    (2)     a suit to adjudicate parentage under Chapter 160.

(c)     In a jury trial:

    (1)     a party is entitled to a verdict by the jury and the court may not contravene a jury verdict on the issues of:

        (A)     the appointment of a sole managing conservator;

        (B)     the appointment of joint managing conservators;

        (C)     the appointment of a possessory conservator;

        (D)     the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child;

        (E)     the determination of whether to impose a restriction on the geographic area in which a joint managing conservator may designate the child's primary residence; and

        (F)     if a restriction described by Paragraph (E) is imposed, the determination of the geographic area within which the joint managing conservator must designate the child's primary residence; and

    (2)     the court may not submit to the jury questions on the issues of:

        (A)     support under Chapter 154 or Chapter 159;

        (B)     a specific term or condition of possession of or access to the child; or

        (C)     any right or duty of a conservator, other than the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child under Subdivision (1)(D).

*Id.*; *see also Alexander v. Rogers*, 247 S.W.3d 757, 761 (Tex. App.—Dallas 2008, no pet.) (party is entitled to jury trial on conservatorship issue).

Cheyenne has provided no support, nor have we found any, for her contention that the court's finding of family violence in a protective order effectively trumps a party's right to a jury trial on conservatorship issues under the plain language of section 105.002. Our conclusion that it does not is bolstered by subsection (f) of section 153.004, which contemplates another use for the protective order. That subsection instructs the fact-finder to consider the protective order in deciding whether there is credible evidence of a history or pattern of abuse. It states:

> In determining under this section whether there is credible evidence of a history or pattern of past or present child neglect or physical or sexual abuse by a parent directed against the other parent, a spouse, or a child, the court shall consider whether a protective order was rendered under Chapter 85, Title 4, against the parent during the two-year period preceding the filing of the suit or during the pendency of the suit.

Tex. Fam. Code Ann. § 153.004(f) (West 2008). Thus, while the protective order must be considered by the fact-finder in making its conservatorship decision, it is not, as Cheyenne asserts, dispositive of that issue. *Id.*; *Alexander*, 247 S.W.3d at 764 ("[W]hile section 153.004(f) of the family code requires the fact finder to consider the entry of a protective order . . . , it does not make the entry of the protective order dispositive on the issue of conservatorship.").

In light of the foregoing, we conclude that the trial court did not err in allowing a jury trial on the question of conservatorship or in submitting that issue to the jury. We overrule Cheyenne's first two issues.

In her third issue, Cheyenne asserts that the trial court and the jury "disregarded credible evidence adduced at trial that a protective order was issued finding family violence by [Marshall]." Cheyenne does not, however, challenge the factual or legal sufficiency supporting the

6

jury's verdict. She complains only that the trial court and the jury ignored certain evidence of family violence that she presented here—namely, the court's protective order and its finding of family violence. As discussed above, however, subsection 153.004(f) of the family code requires only that the fact-finder *consider* whether a protective order was rendered in determining if there is credible evidence of a history or pattern of family violence. Tex. Fam. Code Ann. § 153.004(f). Thus, we must decide if the jury considered the protective order in making its conservatorship decision.

In the present case, the trial court admitted the protective order into evidence. The court also properly charged the jury on its duty to consider credible evidence of intentional physical abuse by one parent against the other. The record, therefore, demonstrates that the jury considered the protective order as required by section 153.004(f). Aside from alleging that the jury arrived at the "wrong verdict," Cheyenne presents no support for her contention that the jury failed to consider the protective order in its deliberations. To the contrary, the record shows that the protective order was in evidence and the jury was properly instructed in the relevant law. As the sole judge of the weight and credibility of the evidence, the jury could have concluded that the findings of family violence in the protective order here, as well as the other testimony and evidence adduced at trial, did not constitute credible evidence of a history or pattern of physical abuse. *Alexander*, 247 S.W.3d at 764; *Garner v. Garner*, 200 S.W.3d 303, 310 (Tex. App.—Dallas 2006, no pet.); *see also* Tex. Fam. Code Ann. § 153.004(b). Accordingly, we conclude that the jury considered the order in its deliberations as required by subsection 153.004(f). We therefore overrule Cheyenne's third issue.

In her fourth issue, Cheyenne asserts that she was "home-towned" and did not receive a fair trial. Rule of appellate procedure 38.1(h) requires that an appellant's brief "contain a clear and

7

concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Cheyenne failed to cite a single legal authority in support of her contention that she did not receive a fair trial. Because Cheyenne has failed to adequately brief it, her fourth issue is waived. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997) (failure to brief an argument waives error on appeal); *Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (holding that appellate court has discretion to deem issues waived due to inadequate briefing). We overrule Cheyenne's fourth issue.

### CONCLUSION

Having overruled Cheyenne's four issues on appeal, we affirm the divorce decree.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: August 13, 2010

8